UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS PATRICK MCGURK

    Petitioner,

v.                                       Case No. 8:19-cv-2854-CEH-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## O R D E R

This cause comes before the Court on Dennis Patrick McGurk's amended petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 6) McGurk challenges his three state convictions for lewd or lascivious molestation by a person 18 years of age or older upon a child 12–16 years of age. Upon consideration of the amended petition (Doc. 6), the response (Doc. 9), and the reply (Doc. 10), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.

### Procedural background

McGurk was charged in a second amended information with three counts of lewd or lascivious molestation by a person over 18 years of age upon a child[1] 12 years

---

[1] The victim in this case was M.J.W.

of age or older but less than 16 years of age and one count of attempted sexual battery on a person 12 or older but less than 18 by a person in familial/custodial authority. (Doc. 9-2, Ex. 20)  A jury convicted McGurk of the three counts of lewd or lascivious molestation but acquitted him of the attempted sexual battery.  (Doc. 9-4, Ex. 27) McGurk was sentenced to consecutive terms of fifteen years imprisonment on each count, for a total of forty-five years imprisonment.  (Doc. 9-4, Ex. 31)  The state appellate court affirmed McGurk's convictions and sentences and affirmed the denial of his amended state Rule 3.850 motion for post-conviction relief.  (Doc. 9-4, Exs. 35, 57)  The state appellate court also denied each of McGurk's two motions to correct an illegal sentence.  (Doc. 9-3, Exs. 37–40)

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed McGurk's convictions and sentences. (Doc. 9-4, Ex. 35) In another *per curiam* decision without a written opinion the state appellate court affirmed the denial of McGurk's amended Rule 3.850 motion for post-conviction relief. (Doc. 9-4, Ex. 57) The state appellate court's affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference

that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82. McGurk bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### Standard for Ineffective Assistance of Counsel

McGurk claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

McGurk must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, McGurk must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. McGurk cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable

7

> lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

    Under 28 U.S.C. § 2254(d) McGurk must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270

(11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

**Ground One[2]**

McGurk alleges that he was interviewed in March 2001—approximately eight years before the crimes for which he stands convicted in the underlying state criminal case[3]—by Detective Chris Iorrio about allegations of sexual misconduct in a separate unrelated case against a different minor victim, M.F.[4], and that the interview was videotaped. McGurk contends that "the Government destroyed exculpatory evidence (DVD recording) w[h]ich allowed detectives to give fraudulent testimony w[h]ich affected the jury." (Doc. 6 at 5)[5] McGurk asserts that during the interview detectives were advised about M.F's mother's connection to "mob boss" Joe Watts, against whom McGurk testified as a witness in a separate federal case in New York. McGurk argues that the Government destroyed the DVD recording of the interview before the

---

[2] In his original federal petition McGurk presented four grounds for relief. (Doc. 1) Because the petition failed to include supporting facts for each ground, the petition was dismissed without prejudice with permission to file an amended petition. (Doc. 5) McGurk complied and filed an amended federal petition in which he presents only two grounds for relief. (Doc. 6) In the response to the amended federal petition the Respondent inadvertently responded to the four grounds in the original petition. (Doc. 9) Although the Respondent addresses Grounds Three and Four from the original petition, those grounds are not before this Court in the amended petition and will not be addressed.

[3] The second amended Information charged McGurk with committing the crimes against victim M.J.W. between March 14, 2009, and March 13, 2013. (Doc. 9-2, Ex. 20)

[4] M.F. testified at trial as a *Williams* Rule witness. (Doc. 9-3, Ex. 25 at 348–97)

[5] The page numbers of the exhibits cited in this Order are those assigned by CM/ECF.

9

trial and that Detective Hallisey gave false testimony at trial about the content of the interview. McGurk argues that without the DVD he "was denied due process of cross-exam[in]ing Det[ective] Chris Hallisey." (Id.)

McGurk avers that he exhausted this ground in the state court in his Rule 3.850 motion. (Doc. 6 at 6) The facts that McGurk alleges in Ground One of the amended federal petition in support of his due process claim are the same facts that he presented to the state post-conviction court in his amended Rule 3.850 motion to support a claim of ineffective assistance of trial counsel. (Doc. 9-4, Ex. 46 at 228–31) In the amended Rule 3.850 motion McGurk alleged that his trial counsel rendered ineffective assistance by not questioning Detective Hallisey about why he was testifying about the 2001 interview instead of Detective Iorrio, whom he alleges actually conducted the interview. (Doc. 9-4, Ex. 46 at 230) McGurk further asserted that counsel rendered ineffective assistance by (1) not questioning Detective Hallisey about whether he remembered McGurk telling him that he had been subpoenaed to testify in a federal trial as a witness against Joe Watts, (2) not following his instructions to question Detective Hallisey as suggested, and (3) not following his instruction to subpoena Detective Iorrio to testify at trial. (Id. at 230–31) McGurk did not present a separate substantive claim alleging a due process violation in the amended Rule 3.850 motion. To the extent that McGurk presents in the amended federal petition the same ground

of ineffective assistance of counsel based on a due process violation that he avers he presented and exhausted in the state court, he cannot obtain relief.[6]

The state post-conviction court denied this ground as follows (Doc. 9-4, Ex. 47 at 240–42) (footnotes omitted) (emphasis in original):

> Defendant first claims that trial counsel was ineffective for failing to challenge former detective Christopher Hallisey's account of an interview he conducted with Defendant in 2001 with respect to the allegations involving M.F. Defendant claims that the charges against him were fabricated in retaliation for his testifying against organized crime figure Joe Watts in a federal case. Defendant alleges that the 2001 interview was actually conducted by a different detective, whom Defendant advised about this alleged set-up, including that Defendant had been subpoenaed to testify against Watts. Defendant argues that trial counsel's failure to question Hallisey during a pre-trial hearing about this issue "allowed the Court to block [Defendant's] only defense" and left "no reason for [Defendant] to testify at trial." It is unclear whether this argument is premised on the defense excluding Hallisey's testimony at trial or being permitted to present evidence related to the alleged set-up by organized crime figures, so both issues will be addressed.
>
> **a. Excluding Hallisey's Testimony**
>
> On February 20, 2015, the Court held a hearing on a number of pre-trial motions. Trial counsel argued that the case against Defendant involving M.F. should be dismissed because the recording of the 2001 interview with Defendant was subsequently destroyed; alternatively, counsel sought to suppress any evidence of Defendant's statements during the interview. Hallisey testified that during the interview, Defendant initially denied the allegations involving M.F., then admitted that he acted inappropriately before stating

---

[6] McGurk attached to his federal petition a copy of the state post-conviction court's order in which the court denied the ground as alleging the ineffective assistance of trial counsel, not as a substantive due process claim. (Doc. 6-1)

11

that he would not admit guilt without an attorney present. The State decided not to bring any charges after the interview, and pursuant to an evidence disposal request issued by law enforcement and approved by the State Attorney's Office, the recording of the interview was destroyed approximately 12 years after it was created.

To warrant exclusion of Hallisey's testimony, Defendant would have to satisfy the test espoused in *Arizona v. Youngblood*, 488 U.S. 51 (1988), as to when the failure to preserve evidence constitutes a denial of due process. *Armstrong v. State*, 73 So. 3d 155, 172–73 (Fla. 2011). Based on Hallisey's hearing testimony discussed above, the recording of the interview was only potentially useful at best, and Defendant would have to establish that law enforcement destroyed the recording in bad faith to warrant exclusion of Hallisey's testimony. *See State v. Bennett*, 111 So. 3d 943, 945 (Fla. 2d DCA 2013). Based on the decline to file charges, the twelve years elapsed between the investigation and the destruction, and the adherence to standard department policy regarding evidence destruction, the Court finds no bad faith on the part of law enforcement or the prosecutor. Further, the Court finds no reasonable probability that questioning Hallisey about whether Defendant discussed his federal trial subpoena would have materially affected this analysis.

Also at the February 20, 2015, hearing, the parties argued a motion in limine filed by the State seeking to exclude evidence related to the M.F.'s mother working for one of Watts'[s] alleged associates or having been responsible for false accusations against Defendant. Trial counsel explained that Defendant had testified in a federal case against Watts, that Watts had some association with M.F.'s mother's workplace, and that the defense should be allowed to present this evidence to argue that the charges against Defendant were fabricated. The Court ultimately excluded these matters from trial, finding their probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. Because the trial judge, being apprised of the factual backdrop of the proposed defense involving a set-up by organized crime figures, excluded such evidence on the grounds of a § 90.403, Fla. Stat., balancing test, the Court finds no reasonable probability

that questioning Hallisey about whether Defendant mentioned his federal subpoena would have materially affected the outcome of the trial.

To the extent that McGurk presents a federal due process claim based on the State's destruction of allegedly exculpatory evidence, he cannot obtain relief. "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense." *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993) (citing *California v. Trombetta*, 467 U.S. 479, 488 (1984)). *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), holds that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006), explains:

> "In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)." *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993) . . . . "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police'" *Illinois v. Fisher*, 540 U.S. 544, 547–48, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004), quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

*See also Davis v. Sellers*, 940 F.3d 1175, 1187 (11th Cir. 2019) ("Additionally, 'the failure to preserve . . . 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith on the part of the police.'"). A determination

13

of bad faith by the police "must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at n.*. No due process violation results if the evidence is only "potentially useful," and the actions of the police could "at worst be described as negligent." *Id*.

As the state post-conviction court noted, the evidence was developed in a separate unrelated twelve-year-old case in which no charges were filed against McGurk. During a pretrial hearing on McGurk's motion *in limine* to exclude evidence related to the destroyed recordings, Detective Hallisey testified to his recollection of the recorded interviews. (Doc. 9-2, Ex. 13 at 204–21)  McGurk cites no specific portion of Detective Hallisey's testimony that he claims was "false" nor does he present evidence to support his contention that the recordings included exculpatory evidence. Both Art Jackson, the felony division chief for the State Attorney's Office, and Lisa Lanham, the manager of the Property and Evidence section at the Sarasota County Sheriff's Office, testified at the pretrial hearing about the procedure utilized in disposing of the recordings. (Id. at 247–68)  McGurk neither cites a portion of their testimony nor presents any evidence demonstrating that the destruction of the evidence resulted from anything other than routine procedure. Because McGurk fails to show that the evidence would have been exculpatory and that the destruction of the

evidence was motivated by bad faith, he cannot establish a federal due process violation.[7] *Youngblood*, 488 at 58; *Revolorio-Ramo*, 468 F.3d at 774.

As to a claim of ineffective assistance of counsel, McGurk presents no evidence to demonstrate either that his trial counsel performed deficiently or that the outcome of his trial would have been different if counsel had either questioned Detective Hallisey as he suggested or subpoenaed Detective Iorrio to testify. The state post-conviction court neither unreasonably applied controlling Supreme Court precedent nor unreasonably determined the facts by rejecting this ground. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Two**

McGurk contends that his trial counsel rendered ineffective assistance by (1) not "turn[ing] in evidence w[h]ich he had in his possession (such as the subpoena for Mr. McGurk to appear at the trial of U.S. v. Joe Watts, July 5, 2001, in Brooklyn fed[eral] court,[)]" (2) not interviewing "his family friend Jerry Fragomeni, whom the McGurks alleged orch[e]strated the set-up by Beverly Fleck and her daughter [M.F.],"[8] (3) failing

---

[7] In his federal petition McGurk alleges that without the recording of the 2001 interview, he was "denied due process of cross-examining" Detective Hallisey. (Doc. 6 at 5) McGurk did not present this due process claim to the state post-conviction court in his Rule 3.850 motion. To the extent that this allegation can be construed as a separate claim for relief, the claim is unexhausted and procedurally defaulted. McGurk cannot obtain relief because he satisfies neither the cause and prejudice exception nor the fundamental miscarriage of justice exception to overcome the default. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

[8] Before the trial the State moved to exclude, *inter alia*, "any and all references [M.F.'s mother] Beverly Fleck's former employer Dominick Fragomeni as 'having been associated with an organized crime figure' and/or 'having been at least partly responsible for the Defendant being falsely accused of a sexual offense in 2001.'" (Doc. 9-2, Ex. 8 at 90) During the pretrial hearing on the motion, McGurk's counsel argued that M.F.'s mother "had a motive to try and discredit" McGurk based on

15

to interview Patrick O'Hara, and (4) abandoning McGurk's only defense. (Doc. 6 at 7–8) McGurk alleges that O'Hara and his brother were approached by "mob associates" in an "attempt to intimidate federal witnesses" and that the intimidation attempt was interrupted by F.B.I. agent Bill Heckel. McGurk argues that "Pat O'Hara's description of Joey's crew would have matched [his wife] Rosa McGurk's description of the three wise guys who came to the McGurks' home to intimidate [petitioner]" and that "Mrs. McGurk would have testified that Joe[] [Watts]'s crew was led by John Gotti's body guard, Tony Milano, who was the Uncle of Rosa Milano McGurk." (Id. at 8) McGurk claims that, without these witnesses, his trial counsel "failed to properly apprise Judge Krug of the factual backdrop of the proposed defense," which resulted in the judge granting the State's motion *in limine* and in trial counsel abandoning McGurk's only defense. (Id.)

The state post-conviction court denied this ground as follows (Doc. 9-4, Ex. 47 at 242–43):

> Defendant next claims that trial counsel was ineffective for failing to present further evidence in opposition to the State's motion in limine discussed above. In brief summary, Defendant alleges that M.F. was at his home when a U.S. Attorney and F.B.I agents arrived at his home for a meeting that resulted in Defendant being subpoenaed to testify in the federal case against Watts. This information was relayed by M.F. to her mother, then to her mother's boss, and finally to Watts'[s] criminal organization. After this, Defendant's wife had several encounters with men attempting to

---

her affair with Fragomeni's son. (Doc. 9-2, Ex. 13 at 103–04) The judge granted the State's motion *in limine* as to Fragomeni's alleged association with organized crime, finding that "the probative value of this evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues." (Doc. 9-2, Ex. 18 at 438)

16

intimidate her and Defendant, and the men told her that her boss had informed them about Defendant testifying in the federal trial. Defendant further alleges that the same men engaged in similar intimidation tactics against another man who would have testified, and his encounter was witnessed by the F.B.I.

While Defendant alleges that his wife would have testified to unspecified "sensitive information" that she had, he does not allege that she had personal knowledge or would otherwise be competent to testify to all of the matters alleged in this claim, particularly the encounter with federal law enforcement or the chain of conversations relaying this to Watts'[s] criminal organization. Moreover, while the allegations in this claim offer more particulars about Defendant's experience with Watts and other alleged organized crime figures than was offered by counsel at the hearing, none of these details makes the matter more probative with respect to the particular allegations of child sex abuse against M.F., nor do they substantially mitigate the danger of unfair prejudice and confusion of the issues. As discussed above, the Court excluded evidence related to this organized crime theory of defense on the basis that its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. Even if true and proven, the additional facts alleged in this claim do not substantially affect the relevant considerations made by the trial judge when granting the motion in limine. The Court therefore finds no reasonable probability that the outcome of the trial would have been different had trial counsel presented and argued these matters during the pre-trial hearing.

First, McGurk fails to demonstrate that counsel performed deficiently by not "turning in" the subpoena related to McGurk's appearance at a separate federal trial in New York against Joe Watts. The state court determined that evidence related to the organized crime theory of defense was unduly prejudicial. Even if counsel had "turned in" this evidence as McGurk suggests, he establishes no reasonable probability

that introduction of the subpoena would have altered the outcome of the pre-trial hearing or resulted in the state court allowing him to proceed at trial with the organized crime theory.

Second, McGurk's unsupported contention that counsel should have interviewed both Fragomeni and O'Hara, without more, is insufficient to warrant relief. *See, e.g., United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported claims cannot support an ineffective assistance of counsel claim). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).[9] McGurk fails to present an affidavit or any other statement from either Fragomeni[10] or O'Hara demonstrating that either witness would have provided the information McGurk suggests he would have if counsel had interviewed them. Consequently, McGurk's contention that either witness could have provided evidence to support his

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36–2.

[10] The record shows that during the pretrial hearing on the State's motion *in limine* McGurk's counsel acknowledged that at the time of the hearing, Fragomeni was deceased and unable to testify. (Doc. 9-2, Ex. 13 at 297)

18

defense is speculative. McGurk fails to show a reasonable probability exists that, if counsel had interviewed these witnesses and presented their testimony at the pretrial hearing, the judge would have denied the State's motion *in limine* and allowed McGurk to proceed with the organized crime theory of defense. Consequently, because he fails to establish prejudice, McGurk cannot show that he was denied a theory of defense as a result of ineffective assistance by his counsel. The state courts' rejection of this ground is neither contrary to, or an unreasonable application of, *Strickland* nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Ground Two warrants no relief.

Accordingly, McGurk's amended petition for the writ of habeas corpus (Doc. 6) is **DENIED**. The Clerk is directed to enter a judgment against McGurk and **CLOSE** this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

IT IS FURTHER ORDERED that McGurk is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, McGurk

must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, McGurk is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. McGurk must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida this 22nd day of December 2022.

Charlene Edwards Honeywell
United States District Judge